IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| KENNETH RAY SOWELL, PRO SE, <br> also known as <br> KENNETH SOWELL, <br> TDCJ-CID # 1322390, <br> Previous TDCJ-CID No. 678664, <br> Previous TDCJ-CID No. 976331, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTOPHER J. KYLE, <br> GAYLORD R. THOMPSON, <br> STEPHEN A. ORTEGA, RAMON G. LONG, <br> BENNY R. BARRICK, DAVID W. MOORE, <br> Mr. NFN BROWN, <br> ROBERT G. LINTON, and <br> FERMIN G. ROSAS, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § | 2:08-CV-0051 |

**REPORT AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On this day came for consideration defendants' June 16, 2010 motion for summary judgment with supporting brief and exhibits filed in the above-referenced and numbered cause. Plaintiff filed his response June 29, 2010, which he supplemented June 30, 2010.

Plaintiff, proceeding pro se, filed the instant cause while a prisoner confined in the Texas Department of Criminal Justice, Correctional Institutions Division, pursuant to Title 42, United States Code, section 1983, complaining against defendants CHRISTOPHER J. KYLE, GAYLORD R. THOMPSON, STEPHEN A. ORTEGA, RAMON G. LONG, BENNY R. BARRICK, DAVID W. MOORE, Mr. NFN BROWN, ROBERT G. LINTON, and FERMIN G. ROSAS. On February 3, 2009, plaintiff filed an Amended Complaint and plaintiff's motion to certify class was denied.

**STATEMENT OF THE CASE**

By his February 3, 2009 Amended Complaint, plaintiff complains about a December 8, 2007, incident alleging he was deprived of his lunch and dinner by defendant THOMPSON "on nonPenalogical [sic] interests." Plaintiff states he then "flooded his cell." Flooding a cell is a prohibited practice used by some inmates to elicit a response from prison officials to some complaint or dissatisfaction an inmate has by clogging the water drain or toilet causing water to overflow and "flood" the area. Plaintiff alleges the "flooding" resulted in defendant THOMPSON turning the water off to plaintiff's cell.

Plaintiff claims when defendants ORTEGA and LONG later came to his cell, he complained THOMPSON had denied him a meal. When told the reason was because he had covered a light bulb, in violation of prison regulations, plaintiff agreed he had done so, but stated he had removed the covering when ordered to do so by THOMPSON and that the incident had occurred earlier, at count time.

Plaintiff claims THOMPSON also denied him his dinner meal that day. Plaintiff says he was denied water in his cell for four days and was without water to drink, shower, wash his hands or flush his toilet. He says he had to live and eat in a closed cell with his own body waste and became ill from constipation, requiring medical treatment.

Plaintiff claims he asked defendant ROSAS on the next shift to turn his cell water back on, but ROSAS declined saying he didn't want plaintiff to flood the run on his shift, as plaintiff had done on THOMPSON's shift, and that his supervisor had instructed him not to turn the water back on.

Plaintiff claims he spoke with defendant LONG the next day, December 9th, and asked him to turn the water back on. Plaintiff says defendant LONG stated he would have the water turned back on but that it was not turned on.

Plaintiff claims he spoke to defendants KYLE and BROWN on the next shift that day (12/9/07), complaining that his water had not been running for two days. Plaintiff says KYLE replied that plaintiff should not have flooded his cell and that he would have to deal with it until the water was turned back on. Plaintiff says the water was not turned back on.

Plaintiff claims he complained to defendant MOORE and BARRICK on December 10th, saying his water had been turned off for three days. Plaintiff says BARRICK responded he would talk to Sergeant Bennette to have the water turned on, but the water was not turned on.

Lastly, plaintiff claims that, on the December 10th second shift, he asked defendant LINTON to turn the water back on because it had been off for three days, and defendant LINTON stated he would put in an emergency request to have the water turned back on, but the water was not turned back on.

Plaintiff requests an award of $120,000.00 in compensatory, punitive, and "emotional" damages against all defendants and his costs in this suit.

## UNDISPUTED FACTS

At all times relevant to this lawsuit, plaintiff was a prisoner confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), and defendants were employed with the Texas Department of Criminal Justice, an agency of the State of Texas. At all times relevant to this cause, defendants were acting within the scope of their official duties.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

By the *Martinez* report filed December 23, 2008, defendants presented an entirely different account of the events recounted by plaintiff. The *Martinez* report shows that on December 8, 2007, plaintiff refused to comply with security procedures for receipt of meals and then flooded the run. On December 10, 2007, plaintiff reported his toilet was not functioning and a night call was placed to the plumber. The plumber responded and found that the toilet

3

button was not functioning. The plumber turned off the water to plaintiff's cell to fix the toilet. The toilet button was fixed that night and the water was turned back on.

By their motion for summary judgment, defendants do not ask the Court to resolve the factual disputes raised by the *Martinez* report, but argue that, in any event, they are shielded by the Eleventh Amendment from plaintiff's claims for monetary damages asserted against them in their official capacities; plaintiff's claims against defendant FERMIN ROSAS are barred by the exhaustion of administrative remedies requirement of the Prison Litigation Reform Act; each defendant is shielded by qualified immunity from plaintiff's claims against them in their individual capacities; plaintiff has failed to state a claim against defendants BARRICK, MOORE, and LINTON; plaintiff has failed to demonstrate the element of deliberate indifference as to all defendants; and plaintiff's alleged injury is, at most, *de minimis*.

## THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). Consequently, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party bears the burden of proof. *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Because the consequences of summary judgment are so severe, the court must be careful to avoid premature termination of legitimate lawsuits merely because of unskilled presentations. *Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980). In determining a movant's request for summary judgment, all reasonable inferences must be made in favor of the party opposing the motion. *Phillip's Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.), *cert. denied*, 484 U.S. 851,

4

108 S.Ct. 152, 98 L.Ed.2d 107 (1987). Only disputes of facts that could affect the outcome of the suit at trial will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Where the movant does not bear the burden of proof at trial, it may meet its summary judgment obligation by pointing out the absence of evidence to support the non-movant's claims. *See, Celotex v. Catrett*, 477 U.S. 317 at 325. Once the movant has met its obligation, the burden shifts to the non-movant to adduce evidence showing a genuine issue of material fact for trial. *Id*. at 324. This burden may be satisfied by designating specific facts on the record and articulating the precise manner in which they support the non-movant's claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). The nonmovant must delineate specific facts which demonstrate the presence of a genuine issue of material fact. *Id.*; *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992). A motion for judgment as a matter of law is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. If there is substantial evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion, then the motion for judgment as a matter of law should be denied. *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996).

### THE STANDARD OF SUMMARY JUDGMENT REVIEW
### UPON A PLEA OF QUALIFIED IMMUNITY

Since qualified immunity depends on whether the defendant violated a clearly established constitutional right, a preliminary inquiry must be made whether the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789,

5

1793, 114 L.Ed.2d 277 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

The second prong of the qualified immunity test is whether the constitutional right alleged to have been violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998). Although analysis under the first prong requires the court to consider currently applicable constitutional standards, analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question. *Id*. (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

## THE LAW AND ANALYSIS

**Eleventh Amendment**

Plaintiff has sued defendants for monetary relief both in their official and their individual capacities; however, suit against defendants in their official capacities for monetary relief is barred by the Eleventh Amendment. The Eleventh Amendment restricts federal court jurisdiction only in those cases in which the state is the real party in interest. *Hander v. San Jacinto Junior College*, 519 F.2d 273, 278 (5th Cir. 1975). A suit against an official in his official capacity is actually a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991); *Sanders v. English*, 950 F.2d 1152, 1158 (5th Cir. 1992). Nothing about plaintiff's requested relief leads the Court to conclude plaintiff's claim falls within the *Ex parte Young* exception for injunctive relief.. Consequently, plaintiff's action

against defendants in their official capacities for monetary relief is foreclosed by the Eleventh Amendment.

"Because [Eleventh Amendment] sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos County, Texas,* 88 F.3d 341, 343 (5th Cir.1996).

**Exhaustion of Administrative Remedies**

Plaintiff's complaint against defendant ROSAS is that, on the first day of the incident, December 8, 2007, defendant ROSAS worked on the shift following defendant THOMPSON's shift, the officer plaintiff says turned off his water. Plaintiff alleges he asked defendant ROSAS to turn his cell water back on, but ROSAS refused and said he didn't want plaintiff to flood the run on his shift, as plaintiff had done on THOMPSON's shift, and that his supervisor had instructed him not to turn the water back on. Defendants argue plaintiff did not grieve ROSAS' refusal to turn his water back on and present copies of plaintiff's grievances showing such a grievance is not present.

Where the movant does not bear the burden of proof at trial, it may meet its summary judgment obligation by pointing out the absence of evidence to support the non-movant's claims. *See, Celotex v. Catrett*, 477 U.S. 317 at 325. Once the movant has met its obligation, the burden shifts to the non-movant to adduce evidence showing a genuine issue of material fact for trial. *Id*. at 324. This burden may be satisfied by designating specific facts on the record and articulating the precise manner in which they support the non-movant's claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

Plaintiff's June 29, 2010 "Motion in Opposition to Defendant's Motion for Summary Judgment," his "Self-Served Declaration" attached to the June 29, 2010 response, and his June 30, 2010 "Supplemental Motion in Opposition to Defendants' Motion for Summary Judgment and Court Order in Support" are all silent concerning exhaustion of administrative remedies as to

his claims against defendant ROSAS. Plaintiff has utterly failed to present any argument or identify any evidence in the record to oppose defendants' motion for summary judgment in favor of defendant ROSAS.

In judging the sufficiency of plaintiff's grievance, the Fifth Circuit teaches an inmate need not present legal theories, *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004), or identify by name each defendant, *id*. at 523. The purpose of the grievance is to alert prison officials to a problem and give them an opportunity to address it, not provide personal notice to particular official of the possibility of a lawsuit. *Johnson*, 385 F.3d at 522.

The PLRA exhaustion requirement requires proper exhaustion in compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Texas Department of Criminal Justice rules set forth in the Offender Orientation Handbook, section VI. at pages 52-53 inform inmates the Step 1 grievance must be forwarded to the Unit Grievance Investigator within 15 days from the date of the alleged occurrence of the issue being grieved. In bold print, inmates are instructed to present only one issue per grievance and not repeatedly grieve the same issue. Further, inmates are instructed they may appeal a Step 1 grievance decision by filing a Step 2 grievance within 15 days of the date of the Warden's signature on the Step 1 form. The Step 2 grievance form instructs inmates that they must attach the completed Step 1 grievance with the Warden's signature to the Step 2 grievance in order for it to be accepted for processing.

Plaintiff filed a Step One Grievance (no. 2008057027) [defendants' exhibit A - 00012-000113] on December 9, 2007, the day after he alleges defendant THOMPSON turned off his water and THOMPSON and, later, ROSAS refused to turn it back on.

In his grievance, plaintiff complains of being refused lunch and dinner and being threatened by THOMPSON on Dec. 8th, of ORTEGA's approval of THOMPSON's action in refusing plaintiff lunch, and that, on December 9th, Sergeant LONG responded to plaintiff's

request that his water be turned back on so he could flush his toilet by saying he would have it turned on, but that defendant LONG then left and did not return. In the December 9, 2007 grievance, plaintiff does not indicate that all his water is still turned off and that he is grieving a continuing condition. Under relief, plaintiff does not request the water be turned back on. Instead, he requests a transfer to another unit or that defendant THOMPSON be "[kept] out of [plaintiff's] presence and from around [plaintiff's] food that way he cant [sic] denie [sic] [plaintiff his] meals or poision [sic] [his] food."

Further, nothing in the grievance indicates it is an emergency or plainly states plaintiff was still without running water.

The Grievance Investigation Worksheets and statements attached [defendants' exhibit A - 000114 – 000124] show the grievance was investigated as a grievance about meal refusal, the first issue presented in the grievance, and was not treated as a grievance about a lack of running water. Plaintiff received a response dated January 19, 2008, addressing plaintiff's complaint about defendant THOMPSON's refusal to give hm a meal.

Plaintiff filed a timely Step 2 grievance on January 23, 2008 but in it, he did not complain that the Step 1 grievance response did not address all the matters he grieved. Further, plaintiff did not submit another Step 1 grievance complaining of the lack of running water after defendant LONG's shift on December 9th.

It was only in his Step 2 grievance, submitted January 23, 2008, that plaintiff stated he was without running water all the remainder of December 9th and all of December 10th, with water restored on the 11th. By January 23, 2008, plaintiff's water had long since been restored. Further, officials did not excuse plaintiff's failure to file a Step 1 grievance on the issue of the lack of water past defendant LONG's shift on December 9, 2010 and did not investigate or respond to plaintiff's attempted expansion of his grievance at Step 2. The Step 2 response

9

addressed only the meal deprivation issue which had been exhausted as shown by the attached Step 1 grievance.

It is clear that prison officials treated plaintiff's grievances to be about meal deprivation and not about lack of water. Plaintiff did not object to that analysis by prison officials. Further, although inmates are not required to identify each defendant by name or to grieve each incident comprising an ongoing condition of confinement which they have already grieved as a continuing condition, inmates must indicate the fact that they are grieving an ongoing condition. Plaintiff's grievance does not do that. Further, if an inmate wishes to sue an officer for one discrete act of failing to remedy some condition, the inmate must grieve that act and identify that defendant in some way, although not necessarily by name. As to plaintiff's claims against defendant ROSAS, plaintiff failed to exhaust administrative remedies and, therefore, his claims against this defendant are barred by the exhaustion requirement. 42 U.S.C. §1997e(a).

In fact, the above review shows plaintiff failed to exhaust administrative remedies with respect to all defendants concerning any claim based on an extended period of water deprivation. Plaintiff has not produced any grievance which would apprise prison officials there was a continuing condition or that plaintiff was without water for an extended period of time or asking that his water be turned back on.

Moreover, as to any claim that ROSAS, on the date plaintiff flooded his cell, refused plaintiff's request to turn the water back on saying that his supervisor told him not to, the facts alleged by plaintiff fail to defeat ROSAS' entitlement to qualified immunity, as there is nothing in plaintiff's allegations to indicate ROSAS acted unreasonably and had reason to know the water would not be turned back on later or that plaintiff would suffer any harm by a few hours' lack of water.

**Qualified Immunity**

Defendants say they are shielded in their individual capacities by qualified immunity and make three arguments in support of their qualified immunity: (1) that plaintiff has failed to state a claim against defendants BARRICK, MOORE, and LINTON, or show their actions were unreasonable; (2) plaintiff has failed to demonstrate the element of deliberate indifference as to all defendants; and (3) plaintiff has alleged and the evidence shows only a *de minimis* injury.

**Failure to State a Claim against Defendants BARRICK, MOORE, and LINTON**

For purposes of analysis at this stage of the proceeding, defendants argue that, accepting, *arguendo*, plaintiff's allegations as set forth in his grievance as true, plaintiff's own contentions show defendants BARRICK and LINTON responded to plaintiff's December 10th complaints to them, each on separate occasions, by filling out a maintenance request, resulting in the restoration of running water in plaintiff's cell shortly after midnight on December 11th. Further, defendants argue, since defendant MOORE was with defendant BARRICK when plaintiff complained to BARRICK and BARRICK said he would get the water turned back on, there was no reason for MOORE to do anything and his failure to take any action which would have been duplicative of BARRICK's does not constitute deliberate indifference.

Review of plaintiff's grievance at defendants's Exhibit A, page 000110, shows defendants correctly represent plaintiff's statements as set forth in his grievance. Further, plaintiff does not dispute the accuracy of his grievance statement, but repeats its substance at page 5 of his "Self Served Declaration" attached to his June 29th summary judgment response. Plaintiff adds that defendant LINTON remarked he hoped plaintiff had "learned [his] lesson."

Confinement in conditions depriving prisoners of the "minimal measure of life's necessities" violates the Eighth Amendment when prison officials act with subjective deliberate indifference to such conditions of confinement. *See Harper v. Showers*, 173 F.3d 716, 719 (5th Cir. 1999). A prisoner asserting a claim that conditions of confinement constituted cruel and unusual punishment must show deliberate indifference on the part of prison officials. *Wilson v.*

*Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The appropriate definition of "deliberate indifference" under the Eighth Amendment is "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d. 174 (5th Cir. 1994). In this regard the Supreme Court has cautioned:

> [A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. at 837-38, 114 S.Ct. at 1979. It is only under exceptional circumstances that a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk.

In this case, plaintiff's own allegations show defendant MOORE had no reason to act or to think any action was necessary on his part. Consequently, defendant MOORE's failure to act did not constitute deliberate indifference and did not violate plaintiff's Eighth Amendment protection against cruel and unusual punishment.

As to defendants BARRICK and LINTON, plaintiff's own statement shows each submitted a "Report for the water to be turned back on." [Defendants' Exhibit A at 000110, Plaintiff's Step 2 Grievance no. 2008057027]. These defendants requested remedial action immediately upon being informed by plaintiff of his need for running water and were responsible for the resumption of running water shortly after midnight. Plaintiff's allegations conclusively show defendants BARRICK and LINTON were not deliberately indifferent to his conditions of confinement and, therefore, did not violate his rights under the Eighth Amendment.

By his allegations, plaintiff has failed to state a claim against defendants BARRICK, LINTON, and MOORE. To the contrary, the conduct of each defendant, as alleged by plaintiff was objectively reasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998). Plaintiff has failed to state a claim against defendants

12

BARRICK, LINTON and MOORE and they have shown each is entitled to qualified immunity against plaintiff's claims.

**Failure to Demonstrate the Element of Deliberate Indifference as to All Defendants**

Defendants argue the facts as alleged by plaintiff do not show any defendant's actions were unreasonable and do not show any defendant was aware of a substantial risk of serious harm and drew such a conclusion. Instead, defendants contend, established caselaw demonstrates a lack of running water for the period alleged by plaintiff is not considered a substantial risk of serious harm and plaintiff has failed to show defendants' actions were unreasonable. Thus, it appears defendants are arguing plaintiff has not met the first prong of qualified immunity, whether the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

Plaintiff has responded, by his June 30, 2010 "Supplemental Motion in Opposition [etc.]," that the Court had determined the issue of defendants' qualified immunity to be a mixed issue of law and fact. That observation was contained in the Court's May 3, 2010, Order Granting, in Part, and Denying, in Part, Defendants' Motion for Protective Order which pointed out defendants had pled qualified immunity but advanced no further supporting argument.

Of course, since that time, the parties' pleadings have served to bring plaintiff's version of the facts into sharper focus, and defendants' argument, for purposes of this motion for summary judgment, does not require the Court to resolve a disputed factual issue. Therefore, the issue before the Court is, without requiring factual determinations inappropriate to summary judgment review, have defendants now shown they are entitled to qualified immunity. The Court finds they have made such a showing and that they are entitled to qualified immunity.

As plaintiff's allegations stand, plaintiff has alleged that, during the second shift on December 8, 2007, plaintiff flooded his cell because defendant THOMPSON refused him lunch.

13

Defendant THOMPSON turned off plaintiff's water to prevent plaintiff from continuing to flood his cell and, possibly, flood the run and to prevent plaintiff from flooding it again once the water was cleaned up. This prevented plaintiff from flushing his toilet from lunchtime on the 8th until shortly after midnight on December 11th. Therefore, plaintiff is alleging defendant THOMPSON's action prevented him from flushing his toilet for approximately 2-1/2 days. During that time, plaintiff says, he urinated, defecated, and vomited into the toilet and was not able to flush it. Plaintiff complains he had to eat in the cell in the presence of the odor and sight of the toilet's contents and eventually quit defecating, choosing, instead, to restrain his bowels. Plaintiff says he suffered severe constipation and chest pains as a result. Plaintiff states he suffers from high blood pressure. Plaintiff states he required treatment for two or three weeks afterwards in order to get over his constipation, with associated vomiting and chest pain.

To the extent defendant THOMPSON initially turned off plaintiff's water, that action was clearly reasonable and intended to keep plaintiff from creating a hazard for guards and other inmates by continuing to increase the flooding or by repeating the flooding once the water was cleaned up. Defendant THOMPSON acted reasonably to restore order and is shielded by qualified immunity. Similarly, defendant ROSAS acted reasonably that same day in refusing to turn the water back when instructed by his supervisor not to do so. Plaintiff has not shown either defendant THOMPSON or ROSAS was involved after December 8, 2007.

Further, the Supreme Court has noted "[a] filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney,* 437 U.S. 678, 686-87, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978). In *Davis v. Scott*, the Fifth Circuit held that, despite his claim on appeal of having been nauseous, a three-day placement in a strip cell with blood on the walls and excrement on the floors did not support a claim of unconstitutional confinement. *Davis v. Scott*, 157 F.3d 1003, 1004 (5th Cir. 1998). To the extent prison conditions are merely harsh or restrictive, "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392,

2399, 69 L.Ed.2d 59 (1981). Confinement in a "dry cell," one in which the water has been turned off at a source outside the cell so the toilet cannot be flushed by the inmate, for about thirty-six hours did not state a claim of Eighth Amendment violation, despite the intensely unpleasant odor, and created no credible threat to inmate's health or safety. *Gilblom v. Gillipsie*, 2010 WL 1813494 Civil Action No. 08-1672, April 6, 2010, (W.D.Pa.). In *Smith v. Copeland*, the Eighth Circuit found that an inmate's four day confinement in a cell with an overflowing toilet, creating a stench of feces and urine did not violate the Eighth Amendment. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

Again, accepting plaintiff's contentions that the water was turned off as he has alleged, it would have no doubt been unpleasant to have to eat, sleep, and live in close proximity to the waste in the toilet for approximately 2-1/2 days. Such claims do not, however, satisfy the first prong of the inquiry for qualified immunity. He has not alleged a constitutional deprivation under contemporary standards, and all defendants have shown they are entitled to qualified immunity.

Importantly, no one defendant is alleged to have been responsible for the entire period of alleged deprivation. Plaintiff has not identified any defendant who was responsible for the extension of his deprivation of water beyond that first day. Plaintiff has not provided any evidence of personal involvement by anyone in that extension. To treat defendant THOMPSON as responsible for more than the deprivation of water on December 8th is not supported by any evidence. Further, to treat anyone else as responsible, without a showing of personal involvement in that extension, is to reduce this suit to one against the prison system as a whole, with no individual defendant. Such a suit, of course, would actually be against the State of Texas, and would be barred by sovereign immunity.

**De Minimis Injury**

Although defendants argue plaintiff cannot allege an injury he did not state in his grievance, that is not the law. A grievance does not have to state a legal theory or the facts

15

necessary to support each element of that theory. It need only comply with prison regulations concerning grievances and alert prison officials to a problem which needs to be addressed, identifying as far as possible, those who have acted wrongly or failed to correct the problem when informed of it. *Accord, Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).

Nevertheless, the Court notes that, to the extent plaintiff requests relief for "emotional" damages[1], that claim is subject to the physical injury requirement of section 1997(e) of the Prison Litigation Reform Act, which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997(e).

The only physical injury alleged by plaintiff was the constipation he experienced when he elected to restrain his bowels and the vomiting, with accompanying nausea he experienced from the smell and sight of the excrement in his toilet. In *Alexander v. Tippah County*, 351 F.3d 626, 631 (5th Cir. 2003), the Fifth Circuit rejected a claim. holding that vomiting and accompanying nausea from the smell of raw sewage covering the floor of the isolation cell, was insufficient to state a physical injury under section 1997(e).

In *Alfred v. Bryant*, the Eleventh Circuit found constipation, vomiting and headaches, along with other alleged physical and mental injuries, were inadequate to support a finding of unreasonable risk of serious harm to inmate's health and safety. *Alfred v. Bryant*, 378 Fed.Appx. 977, 2010 WL 1881064 (11th Cir.).

Likewise, in the instant suit, plaintiff's claimed injuries are not adequate to support plaintiff's request for "emotional" damages.

**Remaining Claims**

---

[1] Plaintiff's October 1, 2008 Amended Complaint, at page 4 of the complaint form.

Although defendants do not analyze plaintiff's claim that defendant THOMPSON denied plaintiff two meals, lunch and dinner on December 8, 2007, and that ORTEGA allegedly approved the denial of lunch, they request summary judgment on these claims as well.

Punishment violates the prohibition against cruel and unusual punishment only if it involves an "unnecessary and wanton infliction of pain." *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). To show an Eighth Amendment claim, a prisoner must show "an objective component of conditions so serious as to deprive him of the minimal measure of life's necessities, as when denied some basic human need." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)(citing *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 19099); *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991).

The state must furnish its prisoners with reasonably adequate food. *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977). The meals must be well balanced and contain nutritional value to preserve health. *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977). The state is not required, however, to provide three meals a day. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986).

Plaintiff claims to have been refused two meals by defendant THOMPSON, his lunch and his dinner on December 8, 2007. The record shows defendant THOMPSON based his refusal to serve plaintiff his lunch on plaintiff's refusal to comply with feeding procedures by not uncovering his light and plaintiff's making a threat to another officer. These matters were investigated first by defendant Sgt. ORTEGA, who submitted a signed statement, found in the grievance investigation of plaintiff's grievance no. 2008057027, that when he "went to investigate the I-210 [plaintiff] had his cell light covered." [Defendants' Exhibit A at 000120]. The I-210 was the disciplinary case plaintiff received for refusing to obey proper feeding procedures and for threatening a guard. As to the threat, plaintiff received a disciplinary hearing and was found guilty. Plaintiff appears to be attempting to challenge these matters because he

17

includes proposed questions of fact concerning them in his grievance response. Plaintiff did not include in this lawsuit or in the grievance any claim concerning the purported threat to another guard or the disciplinary case on it, nor did plaintiff indicate he was challenging a disciplinary case about his covered light.

Nor has plaintiff alleged the other meals he received were nutritionally inadequate and does not state he sustained any harm from the alleged deprivation. Nothing in plaintiff's pleadings responsive to defendants' summary judgment motion indicates or points to evidence proving plaintiff was exposed to a substantial risk of harm by missing these two meals or that either defendant THOMPSON or ORTEGA was aware of any risk of harm to plaintiff. Although plaintiff states, almost in passing, that he had high blood pressure and informed defendant ORTEGA of that fact, plaintiff's medical records do not show his condition was aggravated by the alleged deprivation of two meals. Further, plaintiff told the nurse, and nothing indicates otherwise, that his chest pains were the result of his having restrained his bowels and suffered constipation, the condition for which he received treatment.

To the extent plaintiff is attempting to challenge the authority of a guard to engage in what he contends is a common practice of refusing an inmate a meal for a rule infraction, he has failed to state a constitutional violation under the facts of this case. This Court does not sit to tell prison officials how to manage prisons or the inmates confined therein. Instead, it the responsibility of the Court to ensure constitutional rights are vindicated; in this instance, to determine whether plaintiff's allegation that he was deprived of two meals states a claim of constitutional dimension. It does not. *Berry v. Brady*, 192 F.3d 504, (5th Cir. 1999)(inmate deprived of eight meals in span of seven months); *Spicer v. Collins*, 9 F.Supp.2d 673, 687 (E.D.Tex. 1998)(deprivation of one breakfast and being forced to go to work hungry); *Romero v. Lann*, 305 Fed.Appx. 242, 2008 WL 5397115, Dec. 29, 2008 (5th Cir.)(denial of two meals over an eight month period); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (Fifth Circuit "assumed, but not without some hesitation," that deprivation of about fifty meals in five months

resulting in loss of about fifteen pounds alleged a harm cognizable under the Eighth Amendment); *Atkins v. Kasper*, 36 F.3d 87, 1994 WL 523658 (5th Cir. 1994) (deprivation of a single meal); *Lucas v. Garner*, 62 F.3d 394, 1995 WL 450090 No. 94-50723 (5th Cir. June 30, 19094) (deprivation of a single meal); *Smith v. Samples*, 68 F.3d 465, 190905 WL 581423 No. 95-30142 (5th Cir., Aug. 22, 1995) (denial of a single evening meal).

## CONCLUSION

For the reasons set forth above, it is clear that, drawing all reasonable inferences in favor of plaintiff, defendants have shown there is no material issue of disputed fact which precludes entry of summary judgment in the instant cause and they are entitled to judgment as a matter of law both on the merits and based on their defense of qualified immunity.

It is the opinion of the Magistrate Judge and RECOMMENDATION to the United States District Judge that defendants' motion for summary judgment be GRANTED and that the Civil Rights Complaint by plaintiff KENNETH RAY SOWELL be DISMISSED WITH PREJUDICE. Federal Rule of Civil Procedure 56(c).

The United States District Clerk shall mail a copy of this Report and Recommendation to plaintiff and to each attorney of record by first class mail.

IT IS SO RECOMMENDED.

ENTERED THIS 13TH DAY OF JANUARY, 2011.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on**

**or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).